**Carter Gene GOODMAN, Appellant,**

v.

**Mary Louise GOODMAN, Respondent.**

**No. 39598.**

Missouri Court of Appeals,
Eastern District.

Jan. 9, 1979.

**748**

Oliver, Oliver & Jones, P. C., Cape Girardeau, for appellant.

Joseph J. Russell and William L. Syler, Jr., Cape Girardeau, for respondent.

STEWART, Presiding Judge.

This is an appeal by plaintiff, Carter Gene Goodman, from a judgment of the trial court that interpreted a settlement agreement and allocated the proceeds of the sale of real estate between former spouses. The court also increased child support payments. We shall refer to plaintiff as husband and to defendant as wife.

On June 26, 1973, wife was granted a divorce from husband, awarded custody of the three children of the marriage and a total of $250.00 per month as child support. At the time of the divorce the parties entered into a property settlement agreement that was "filed" with the court and "approved".

The settlement agreement gave wife the right to occupy the family residence and provided a formula for disposition of the proceeds upon sale of the residence. The agreement also provided a sliding scale for support for the children dependent upon variations in husband's earnings.

Upon sale of the residence husband filed a declaratory judgment action in which he sought a declaration of the rights of the parties to the proceeds of the sale. Wife's responsive pleading addressed the issue of disposition of the proceeds of the sale and made claim for additional child support in accordance with the property settlement agreement. Husband challenged the judgment as to each of the issues. We shall discuss the facts in detail as they pertain to the issues discussed.

### I. SALE OF REAL ESTATE

Paragraph Eight of the settlement agreement, as pertinent to this issue provides:

"The parties now own as tenants by the entireties a residence commonly known as 2539 Ford Drive. Upon the execution of this agreement, the parties agree that said tenancy by the entirety shall be terminated and destroyed and that between themselves they will execute such deeds, papers and other documents as may be necessary to settle their interests in said real estate, by the husband 20%, by the wife 80%.

"The wife shall have the absolute right to live in and occupy said house, free of rent, for so long as she may desire, but she shall be responsible for the payment

of all taxes, insurance and the indebtedness against the property as hereinbefore stated. Upon the sale of said premises to any third party, the husband agrees to execute any and all deeds and other documents necessary to effect said sale. In consideration for said agreement by the husband, at the time such conveyance is made, the wife shall pay to the husband 20% of the net proceeds of the sale, computing the net proceeds of the sale by subtracting the balance due Cape Girardeau Federal Savings and Loan Association on September 1, 1972, from the proceeds of the sale, and also by subtracting from the gross proceeds of sale 20% of the real estate taxes paid for the year 1972 and all subsequent years, and 20% of the insurance premiums on said property paid for the year 1972 and subsequent years."

The residence was sold with the assistance of a real estate broker on August 27, 1976 for the sum of $38,900.00. After payment of the balance due on the note of Colonial Federal Savings and Loan Company and the cost of sale, including taxes, sales commission and abstract, the balance of $21,288.66 was placed in escrow pending the determination of the issues presented by this portion of the litigation.

The court decreed that in determining the amount of the net proceeds the following controverted items, among others, should be deducted from the gross sales price before making proportional distribution:

| | |
|---|---:|
| Realtor's Sales Commission | $1,900.00 |
| Cost of Abstract | 51.50 |
| Taxes for the year 1976 | 203.70 |

The parties are agreed that the court mistakenly deducted the taxes for 1976 in its decree. Only 20% of those taxes should have been deducted. The parties also stipulate that husband is indebted to wife in the sum of $1,050.00 and that this sum is to be deducted from husband's share of the net proceeds as finally determined.

■ The divorce decree was entered before the effective date of the Dissolution of Marriage Act, §§ 452.300 et seq. The settlement agreement was "filed" and "approved". It was not incorporated into the decree. The obligations of Paragraph Eight of the agreement are contractual and not subject to modification. The terms of the agreement are to be interpreted and enforced in accordance with the law of contracts. *Toth v. Toth*, 483 S.W.2d 417 (Mo. App.1972).

■ We are asked to determine whether the court erred in deducting the cost of the abstract and the sales commission in determining the net proceeds of the sale. The courts must give the words used in a contract their natural and ordinary meaning, they may not make contracts or add provisions by judicial interpretation. "We are to determine what the parties intended by what they said, and we cannot be concerned with what they might have said, or with what they perhaps should have said." *Brackett v. Easton Boot and Shoe Co.*, 388 S.W.2d 842, 847 (Mo.1965).

■ The parties used the term "net proceeds" and exercised the privilege of contracting parties to define the term as used in the agreement. See *O'Brien v. Missouri Cities Water Co.*, 574 S.W.2d 13 (Mo.App. 1978). They specified each item that was to be subtracted from the proceeds of the sale in order to determine the "net proceeds." They did not include the cost of the abstract or the cost of sales commission, in the event that the sale was made by a real estate broker.

There is ample consideration for excluding the questioned items from consideration in determining the net proceeds as stated in the agreement. Husband agreed that he would permit wife to live in the house at her pleasure which could be for her life or until it was sold. Upon sale wife was to receive the larger portion of the proceeds, 80 per cent. It will be noted from reading the agreement that the definition of "net proceeds" is found under the obligations of the wife and is part of the consideration of the promises of the husband.

In this case we are not dealing with usage or custom of a trade. Thus *Soutier v.*

*Kellerman,* 18 Mo. 509 (1854) relied upon by wife has no application. Wife also directs us to *Smith v. Smith* 56 Wash.2d 1, 351 P.2d 142 (1960). "Net proceeds" was defined as the amount remaining after deducting the amount of the mortgage and the expenses of sale. That case has no application here because the parties in this case have designated those items to be deducted in computing "net proceeds."

By the plain and ordinary language of the agreement the real estate commission and the cost of the abstract were not to be deducted from the gross proceeds of the sale.

## II. CHILD SUPPORT

Paragraph Five of the settlement agreement filed with the court at the time the proceeding for divorce was heard provided:

"5. For the support and maintenance of the minor children born of this marriage, the husband agrees to pay to wife the following minimum amounts on a monthly basis, with the monthly payments to be made to the wife on or before the fifth day of each month:

A. For the support of Scott Goodman, $83.33
B. For the support of Lisa Goodman, $83.33
C. For the support of David Goodman, $83.34

"The amounts herein mentioned are minimum amounts and are based upon the present income level of the husband. In the event the husband's gross income (as defined for federal income tax purposes) shall increase in the future so that it is in excess of $11,000.00 per year, the amounts payable for the support of each of the children shall be increased by eight per cent of the increase in the husband's gross income, (making a total of 24% for the three children or 16% for two children, or 8% if only child is involved) with such increased amount being payable on a monthly basis, beginning two months after such increased income becomes available to the husband. In the event the husband's income after having been so increased shall decrease, the monthly sup-

port payments shall likewise be reduced in the same manner, effective two months after such decrease in income becomes effective. However, in no event shall the amount paid for support of the children be reduced to less than the minimum amount of $83.33 per month per child herein agreed upon. The husband shall provide the wife with a statement of his preceding year's income by April 15 of each year."

The original decree of the court provides:

"[t]hat plaintiff [husband] pay defendant [wife] child support in the sum of $250.00 per month . . . ."

In the present proceeding wife alleges that husband had not complied with the provisions of Paragraph Five of the settlement agreement and asked the court to require husband to furnish income statements and for additional child support in accordance with the formula contained in Paragraph Five of the settlement agreement.

Based upon an increase of husband's income in excess of $11,000.00 per year the court increased the child support to $99.52 per child per month for each of the three children, a total of $328.57 per month. The court also ordered that the increase under the formula contained in the agreement be effective as of March 1, 1977.[1]

There was no evidence presented to the court concerning the present needs of the children or of the father or of any change in circumstances of the parties except for an increase in the husband's income from $12,275.03 to $14,929.65. There was no substantial evidence of changed circumstances so substantial and continuing as to make the terms [of the original decree] unreasonable. § 452.370(1). *Langwell v. Langwell,* 559 S.W.2d 65 (Mo.App.1977).

Wife tacitly concedes this conclusion by arguing, in accord with her pleading, that "[t]he court was not modifying the original decree it was enforcing the existing terms of a contractual agreement of the parties."

1. Because of the conclusion that we reach we do not rule the question of the retroactive effect of the decree. There is an apparent error in the sum of total child support payment.

■ Under the law as it existed at the time the divorce was granted and under the Dissolution of Marriage Act the parties may enter into an agreement with respect to child support, custody and visitation. Such agreements however, are only advisory. Fashioning a decree which reflects the best interest of the children is the responsibility of the court. § 452.325. *Williams v. Williams*, 542 S.W.2d 563 (Mo.App.1976). As reiterated in *E. C. S. v. J. D. L.*, 529 S.W.2d 423 (Mo.App.1975), " 'where the object of the contract, and hence of the decree in which it is merged, is to provide for the welfare of a child of the divorced parties * * * no contract of the parties will be binding and no decree of the court immutable, but the one may be disregarded and the other modified from time to time as the welfare of the child may require.' *Jenks v. Jenks*, 385 S.W.2d 370, 377[10] (Mo.App. 1964)."

Modification of a decree is now controlled by § 452.370 which, as apropos here, provides: ". . . provisions of any decree respecting . . . support may be modified only as to installments accruing subsequent to the motion for modification and only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable."

■ The trial court exercised its power and assumed its responsibility in entering a decree providing for child support in the original decree of divorce. The decree did not incorporate the terms of the settlement agreement with respect to child support.[2] Any change in that decree respecting child support must be made in compliance with § 452.370 and not by way of enforcement of the contract of the parties.

■ Wife, by her pleading, sought enforcement of the contract not a modification of the decree. The judgment of the court was responsive to the pleadings. The only evidence of a change in circumstances was the improved financial status of husband. A change in financial status is a significant factor in a proceeding to modify but standing alone is not sufficient to warrant a modification of a decree of support. See *Seelig v. Seelig*, 540 S.W.2d 142 (Mo. App.1976).

■ The judgment with respect to child support is not warranted by the pleadings or the proof.

The judgment of the trial court with respect to the distribution of the proceeds of the sale of the real estate is reversed and remanded with directions to enter judgment in accordance with the views expressed herein. The judgment with respect to child support is reversed and the original judgment for child support is reinstated.

STEPHAN and REINHARD, JJ., concur.

2. We are not called upon to determine whether the terms of the agreement could properly be made a part of the decree.